**JEFFERSON COUNTY BOARD OF EDUCATION, Appellant**

v.

**Hon. Brian C. EDWARDS, Judge, Jefferson Circuit Court, Appellees**

**and**

**Terum Hopper, Real Party In Interest.**

**No. 2013–SC–000444–MR.**

Supreme Court of Kentucky.

June 19, 2014.

Byron Edward Leet, Jean Winfield Bird, for Appellant.

Brian Clifford Edwards, Judge, for Appellee.

Michael Richard Slaughter, for Real Party In Interest.

Opinion of the Court by Justice ABRAMSON.

The Jefferson County Board of Education ("the Board") filed an action in the Court of Appeals seeking a writ compelling the Jefferson Circuit Court to dismiss the wrongful termination action filed by former teacher, Terum Hopper. The Court of Appeals denied the Board's request, holding that the circuit court had subject matter jurisdiction over the action, and that the Board had an adequate remedy. The Board appeals the Court of Appeals' decision, arguing that Hopper did not exhaust his administrative remedies, thus depriving the circuit court of jurisdiction. We now reverse and grant the writ directing the circuit court to dismiss the action.

## I.  FACTS

On February 2, 2009, Terum Hopper received a conditional offer for a limited contract of employment as a teacher with Jefferson County Public Schools ("JCPS"). As a condition of employment, the Jefferson County Board of Education ("the Board") required Hopper to complete a computerized application wherein he was asked to attest that he had no criminal record. Hopper was also required by Board policy to provide his fingerprints so that federal and state background checks could be completed. According to a letter memorializing Hopper's agreement with JCPS, "satisfactory KY State and Federal Criminal Record Checks" were conditions of his offer of employment. Hopper received a follow-up letter confirming his receipt of his offer with a list of items that he would need to bring with him to a meeting with a JCPS clerk in order to complete his employment paperwork.

Hopper failed to report to submit fingerprints prior to the commencement of the 2009–2010 school year. Nevertheless, he began teaching in a JCPS high school. On October 22, 2009, Dr. Dianna Decker, human resources director at JCPS, contacted Hopper's principal, Jackie Wisman, and informed him that Hopper's personnel file was incomplete, and that JCPS was required to clear Hopper's criminal history

in order to comply with state law.[1] Mr. Wisman assured Dr. Decker that he would advise Hopper of the discrepancy. That same day, a JCPS clerk contacted Hopper informing him of his incomplete file. In that email, Hopper was instructed to report for finger printing at the designated location by October 27, 2009. Dr. Decker contacted Mr. Wisman on October 28 after Hopper again failed to report for fingerprints the day prior. Hopper assured Dr. Decker that he would report that afternoon to submit his fingerprints.

The subsequent Federal Bureau of Investigation's background check revealed that Hopper had pleaded guilty to assault, harassment, and terroristic threatening in Pennsylvania. Thereafter, Dr. Decker asked Hopper to report to her office so that they could discuss the results of the background check. Hopper did not attend the meeting, but turned in his school keys upon Mr. Wisman's request. On November 3, Dr. Decker sent Hopper a letter accepting his resignation effective November 4, 2009. On November 12, Hopper, accompanied by a representative of the Jefferson County Teachers Association, attended a meeting with Mr. Wisman and Dr. Decker, where they discussed the particulars of the F.B.I. background check. When he claimed that the F.B.I. report revealing the criminal convictions was based on mistaken identity, Dr. Decker encouraged Hopper to present the matter to the Board's internal employee relations director, which he failed to do. On November 16, Hopper received a letter from then-superintendent Sheldon Berman stating that the parties present at the November 12 meeting had all agreed that Hopper had surrendered his keys to Mr. Wisman, constituting a resignation, but that Hopper had rescinded his resignation at that meeting. The letter further notified Hopper

that his employment with JCPS was being terminated for falsification of his employment application.

Hopper filed suit in Jefferson Circuit Court in October 2010, alleging that the Board terminated his contract and refused to consider rehiring him despite being apprised of the mistaken identity theory. He sought damages for breach of the employment contract, defamation, and intentional infliction of emotional distress. The Board moved for summary judgment on two grounds. First, the Board argued that Hopper's tort claims were barred by governmental immunity. Second, the Board asserted that Hopper was required to avail himself of the administrative remedies set forth in Kentucky Revised Statute ("KRS") 161.790 as a means of challenging the termination of his employment contract. Hopper does not dispute that he never pursued administrative remedies in this matter. Hopper did not respond to the Board's motion for summary judgment but, instead, filed his own motion for summary judgment on the grounds that he was not an employee-at-will. Specifically, Hopper argued that he was entitled to summary judgment because the Board could not meet the termination standards set forth in KRS 161.790. The trial court granted the Board's summary judgment motion on the governmental immunity claims, but denied the Board's motion as to the contract claims. In its ruling, the trial court declared that Hopper was entitled to elect to file suit rather than pursue the administrative remedies set forth in the statute.

The Board petitioned the Court of Appeals pursuant to Civil Rule ("CR") 76.36 and CR 81 seeking a writ prohibiting the lower court from trying Hopper's breach of contract claims on the basis that the

---

1. *See* Kentucky Revised Statute (KRS) 160.380.

claim was beyond the court's jurisdiction. The Court of Appeals granted a portion of the Board's motion postponing the trial, but denied the petition for a writ, ruling that Hopper's failure to exhaust administrative remedies did not deprive the circuit court of its subject matter jurisdiction over his claim. The Board now challenges the Court of Appeals' denial of the writ.

## II. ANALYSIS

The standard for the issuance of an extraordinary writ is set forth in this Court's *Hoskins v. Maricle* decision:

> A writ of prohibition may be granted upon a showing that (1) the lower court is proceeding or is about to proceed outside of its jurisdiction and there is no remedy through an application to an intermediate court; or (2) that the lower court is acting or is about to act erroneously, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise and great injustice and irreparable injury will result if the petition is not granted.

150 S.W.3d 1, 10 (Ky.2004). The Board argues that the Court of Appeals erred in denying the writ on the grounds that the circuit court would be proceeding without jurisdiction if it is permitted to preside over Hopper's breach of employment contract claims, entitling the Board to relief under the first *Hoskins* prong. We agree, and for the reasons stated herein, grant the writ.

In his own motion for summary judgment, Hopper argued that the Board failed to prove his dismissal was in accord with the termination standards set forth in KRS 161.790, the statute governing his employment contract with JCPS.[2] As this Court recently noted, "KRS 161.790 establishes the process for the adjudication of public school teacher disciplinary matters." *Bd. of Educ. of Fayette Cnty. v. Hurley–Richards,* 396 S.W.3d 879, 882 (Ky.2013). Under the provisions of the statute, a teacher's contract remains in force "during good behavior and efficient and competent service by the teacher," and may only be terminated in cases of "[i]nsubordination," "[i]mmoral character or conduct unbecoming a teacher," "[p]hysical or mental disability," or "[i]nefficiency, incompetency, or neglect of duty." KRS 161.790(*l* )(a)–(d). In addition, "[t]he provisions of KRS 161.790 shall apply to terminate employment of a certified employee on the basis of a criminal record[.]" KRS 160.380(8)(d). Hopper was required to obtain a federal criminal background check upon signing his conditional employment contract with JCPS.[3] Hopper was terminated after evidence of his criminal[4] record came to light following a criminal background check, and, therefore, Hopper

---

**2.** Hopper also argued that he was not an employee-at-will subject to at-will termination. This is essentially a reiteration of the KRS 161.790 contract claim.

**3.** KRS 160.380 provides, in pertinent part: "(5)(a) A superintendent shall require a national and state criminal background check on all new certified hires in the school district and student teachers assigned within the district. Excluded are certified individuals who were employed in another certified position in a Kentucky school district within six (6) months of the date of hire and who had previously submitted to a national and state criminal background check for the previous employment.

(b) The superintendent shall require that each new certified hire and student teacher, as set forth in paragraph (a) of this subsection, submit to a national and state criminal history background check by the Department of Kentucky State Police and the Federal Bureau of Investigation."

**4.** As noted above, Hopper challenged the FBI record as a case of mistaken identity.

is correct that the provisions of KRS 161.790 apply to his case.

In disciplinary cases [5] under this statute, the superintendent is directed to "furnish the teacher with a written statement specifying in detail the charge against the teacher," whereupon the aggrieved teacher "may within ten (10) days after receiving the charge notify the commissioner of education and the superintendent of his intention to answer the charge[.]" KRS 161.790(3). If the teacher exercises his right under subsection (3) to answer the charge, the remainder of the administrative process goes into effect, including the commissioner's appointment of a tribunal and setting of a time and date for a hearing. See KRS 161.790(4). At the conclusion of the administrative hearing, the tribunal may vote and render its decision, which "shall be a final order and may be rendered on the record." KRS 161.790(7). If the tribunal's final order calls for disciplinary action against the teacher, "[t]he teacher shall have the right to make an appeal to the Circuit Court having jurisdiction in the county where the school district is located[,]" whereupon "[t]he review of the final order shall be conducted by the Circuit Court as required by KRS 13B.150." KRS 161.790(9).

The General Assembly has constructed this legislative scheme in order to provide teachers and school administrators with an effective and neutral means by which to resolve disputes arising from teacher discipline. See Fankhauser v. Cobb, 163 S.W.3d 389 (Ky.2005). A disciplined teacher may elect *not* to answer the charge, in which case his dismissal becomes final ten days after the formal issuance of the charge. KRS 161.790(3). However, a teacher's election to not answer a charge and thereby forego the in-

stitution of administrative proceedings does not entitle the teacher to instead challenge his disciplinary claims in circuit court. Parsing the permissive language in the statute leading to the foregoing meaning, specifically, the application of the word "may," is an improper exercise in statutory interpretation. See Jefferson Cnty. Bd. of Educ. v. Fell, 391 S.W.3d 713, 727 (2012). ("Simply put, courts should not wear blinders and refuse to venture beyond a phrase or passage that one or more of the litigants offers up as dispositive."). A complete reading of the statute in its entirety reveals a straightforward method of adjudication where action on behalf of the aggrieved teacher and the foregoing administrative process is directed in KRS 161.790(3)–(8), followed by a description of the circuit court's authority on judicial review in KRS 161.790(9) and KRS 13B.150(2).

The Court of Appeals' conclusion that Hopper was not required to first exhaust his administrative remedies is erroneous. The legislature has the authority to limit the circuit court's subject matter jurisdiction, and our case law strongly suggests that it has done so with respect to unexhausted administrative claims. As declared by this Court, "exhaustion of administrative remedies is a *jurisdictional prerequisite* to seeking judicial relief." Commonwealth v. DLX, Inc., 42 S.W.3d 624, 625 (Ky.2001) (emphasis supplied). Therefore, Hopper was first required to exhaust his administrative remedies before the circuit court could exercise jurisdiction over the claim.

The requirement that a party must exhaust administrative remedies before proceeding to court represents long-standing precedent in the Commonwealth. *Ken-*

---

**5.** Possible sanctions include termination of the teacher's contract, suspension without pay, or a public or private reprimand. KRS 161.790(10).

tucky Retirement Systems v. Lewis, 163 S.W.3d 1, 3 (Ky.2005) ("Exhaustion of administrative remedies is a well-settled rule of judicial administration that has long been applied in this state."). In 1948, our predecessor court stated that "[w]here an administrative remedy is provided by the statute, relief must be sought from the administrative body and this remedy exhausted before the courts will take hold." Goodwin v. City of Louisville, 309 Ky. 11, 215 S.W.2d 557, 559 (1948). The Goodwin court first described the exhaustion of an administrative remedy as "a jurisdictional prerequisite" that must be satisfied before a party may "resort to the courts." Id. (citing Martin v. Bd. of Council of City of Danville, 275 Ky. 142, 120 S.W.2d 761 (1938)).

In the decades since Goodwin, the principle that a party must exhaust the legislatively prescribed administrative remedies has persisted in our jurisprudence.[6] We reiterated this principle in Popplewell's Alligator Dock No. 1, Inc. v. Revenue Cabinet:

> Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may: (1) function efficiently and have an opportunity to correct its own errors; (2) afford the parties and the courts the benefit of its experience and expertise without the threat of litigious interruption; and (3) compile a record which is adequate for judicial review. In addition, an agency has an interest in discouraging frequent and deliberate flouting of the administrative process. [T]he exhaustion doctrine does not preclude, but rather defers, judicial review until after the expert administra-

tive body has built a factual record and rendered a final decision. By honoring the exhaustion doctrine, courts avoid interfering with the administrative process, and the initial reviewing court benefits from the specialized knowledge of the agency. With increasing case loads and demands upon the courts, it is important to note that [t]he rule requiring exhaustion also promotes judicial economy by resolving issues within the agency, eliminating the unnecessary intervention of courts.

133 S.W.3d 456, 471 (Ky.2004) (internal quotations and citations omitted).

▇▇▇ Although the Court of Appeals' interpretation of Daugherty v. Telek, 366 S.W.3d 463 (Ky.2012), is technically correct, its reliance on the case as dispositive of the relevant issue in Hopper's case is misplaced. The exhaustion doctrine's application does not "remove" a certain "type of case" from a court's subject matter jurisdiction, but simply defers the court's jurisdiction until a later time. Here, the circuit court did not "lose subject matter jurisdiction," but exercised it prematurely given the clear directive of the legislature in KRS 161.790. In a sense, this is the converse of Appalachian Reg'l Healthcare, Inc. v. Coleman, 239 S.W.3d 49 (Ky.2007) wherein we granted a writ when a judge who had recused himself from a case attempted to reenter the case to rule on a pending motion. This Court held that the circuit court judge had jurisdiction over the pending medical malpractice case initially but, after recusal, would be acting without jurisdiction. Similarly, in Conrad v. Evridge, 315 S.W.3d 313 (Ky.2010), we acknowledged that the

---

6. The primary exception to the exhaustion doctrine arises when a party seeks to challenge the constitutionality of an administrative statute or a regulation. DLX, Inc., 42 S.W.3d at 626. In such cases, the claim is placed in the hands of the court without first requiring the administrative agency to weigh the issue. See id., (acknowledging that "an administrative agency cannot decide constitutional issues.").

circuit court had jurisdiction over probation revocation matters generally but was acting without jurisdiction when it attempted to hold a revocation hearing after the defendant's probationary term had ended. Jefferson Circuit Court clearly has jurisdiction over breach of contract cases but where the plaintiff is a public school teacher, absent special circumstances discussed below, that jurisdiction arises *after* the administrative process is completed.

■ Furthermore, the processes set forth in KRS 161.790 will not deprive Hopper of an appropriate remedy if the tribunal ultimately rules in his favor. In addition to reinstatement, Hopper may be entitled to his full salary for any period of suspension during the administrative process.[7] KRS 161.790(8)–(9). In *Hurley–Richards*, 396 S.W.3d at 888, a public school teacher, who was terminated and later placed on suspension without pay during the pendency of the KRS 161.790 proceedings, was entitled to full pay for the entire period of her suspension following her successful appeal to this Court. Moreover, a public school teacher wishing to sue a school board based on grounds *outside* the governance of KRS 161.790 would be free to bring those claims before a court. For example, a public school board's violation of the Kentucky Civil Rights Act, KRS 344.010, which prohibits discrimination "against an individual with respect to compensation, terms, conditions, or privileges of employment," may be properly litigated before a court without first having to resort to administrative proceedings. *See Ammerman v. Bd. of Educ. of Nicholas Cnty.*, 30 S.W.3d 793 (Ky.2000). In addition, a teacher may have recourse to federal court for a viola-

tion of a federal statute relating to employment without first being required to avail himself of state administrative remedies. *See Howard v. Magoffin Cnty. Bd. of Educ.*, 830 F.Supp.2d 308 (E.D.Ky.2011) (a Kentucky public school teacher alleged that her employer school board violated the Age Discrimination in Employment Act and the Americans with Disabilities Act).

■ Hopper's complaint does not present a common law breach of contract claim, but rather a wrongful termination claim under KRS 161.790, a statute which Hopper, in his motion for summary judgment, openly professed governed his claim. Therefore, the exhaustion doctrine cannot be an affirmative defense in this case as posited by the Court of Appeals. As established by the plain language of the statute, and reinforced by the principles enunciated in *Popplewell*, jurisdiction over a public school teacher's wrongful termination claim is first in the administrative body and then in the circuit court by appeal. KRS 161.790(7)–(9). Here, Hopper's failure to exhaust his administrative remedies deprived the circuit court of jurisdiction over the claim. Therefore, the Board is entitled to relief under the first prong of the *Hoskins* standard, i.e., "the lower court is proceeding . . . outside of its jurisdiction." 150 S.W.3d at 6.

Even if the circuit court could be deemed to be acting within its jurisdiction, but "erroneously" under the second prong of *Hoskins*, 150 S.W.3d at 5, the adequacy of an appellate remedy is doubtful in this case. As articulated in *Popplewell*, the purpose of the exhaustion doctrine is to provide the administrative agency with an efficient resolution process where an ade-

---

7. As previously stated and not contested in this appeal, the circuit court granted the Board's motion for summary judgment con-

cerning Hopper's tort-based claims on the basis of governmental immunity.

quate record for appellate review by the courts may be compiled. *See* 133 S.W.3d at 471. While the cost of litigation is not enough to justify the issuance of a writ under *Hoskins,* relegating the Board to a trial interferes with the orderly administrative proceedings for which the General Assembly has so clearly provided. *Cf. Independent Order of Foresters v. Chauvin,* 175 S.W.3d 610 (Ky.2005). This interference is a hardship that certainly goes beyond the burden of litigation costs. Other states, such as Texas, share this position, concluding that forcing a party to go to trial where administrative remedies are available constitutes a disruption of the orderly processes of government. *See, e.g., In re Entergy Corp.,* 142 S.W.3d 316, 321 (Tex.2004). Denying the writ would constitute a similar disruption here, where our legislature has furnished an administrative process aimed at the neutral and efficient resolution of disputes for discharged teachers. *See Fankhauser,* 163 S.W.3d at 395–96 (concerning post–1990 amendments to the teacher employment termination statute, "[t]he primary thrust of the amendments, however, was to transfer responsibility for the administrative hearing as to charges of insubordination, incompetence, etcetera against a teacher to a neutral tribunal."). Simply put, allowing claims by teachers whose contracts have been terminated to be filed first in circuit court would result in significant interference with an important legislatively-mandated administrative process.

In summary, Hopper's premature filing of an action in circuit court without first exhausting the administrative remedies provided in KRS 161.790 deprived the circuit court of subject matter jurisdiction to hear his claim. The first prong of *Hoskins v. Maricle* is plainly met. Therefore, we grant the writ and direct the trial court to dismiss the action.

MINTON, C.J.; CUNNINGHAM, NOBLE, and VENTERS, JJ., concur. KELLER, J., dissents by separate opinion in which SCOTT, J., joins.

KELLER, J., dissenting.

I must respectfully dissent. The Board brought this case before us as an original action seeking a writ of mandamus/prohibition. As noted by the majority, such a writ is appropriate only if the lower court is acting outside its jurisdiction or if it is erroneously acting within its jurisdiction, and the aggrieved party will not have an adequate remedy on appeal. *Hoskins v. Maricle,* 150 S.W.3d 1, 10 (Ky.2004). I agree with the majority that: "The legislature has the authority to limit the circuit court's subject matter jurisdiction...." Furthermore, I agree with the majority that the legislature did not divest the circuit court of jurisdiction by granting authority to hear teacher discipline claims to an administrative body. As set forth in KRS 23A.010, a circuit court retains jurisdiction over "all justiciable causes not exclusively vested in some other court." KRS 161.790 gives authority to hear teacher discipline claims to an administrative body, not "some other court;" thus the circuit court retains jurisdiction over such claims.

However, I disagree with the majority's conclusion that: "[o]ur case law strongly suggests that [the legislature] has [limited the circuit court's jurisdiction] with respect to unexhausted administrative claims." If the legislature has the power to limit subject matter jurisdiction, which it undoubtedly does, then it will do so. It will not leave it up to the courts to determine whether it has done so. While I agree that KRS 161.790 gives authority to the administrative body to hear teacher discipline claims, nothing in the statute delays the circuit court's jurisdiction pending

completion of the administrative process. If the legislature had wanted to delay the circuit court's ability to assert its jurisdiction until the administrative process had been exhausted, it could have done so.

Rather than analyzing this as a jurisdictional question, I believe this case should be analyzed as a question of venue. As we stated in *Dollar General Stores v. Smith*, 237 S.W.3d 162, 166 (Ky.2007), "[T]here are fundamental distinctions between the concepts of jurisdiction and venue, the former relating to the power of courts to adjudicate and the latter relating to the proper place for the claim to be heard[.]" As noted above, the legislature did not divest the circuit courts of original jurisdiction over claims involving teacher discipline, nor did it specifically delay jurisdiction. What I believe the legislature did was to direct litigants to the "place" where they should first litigate their claims. Therefore, whether to grant relief does not fall within the first of the *Hoskins* prongs, but the second.

As the majority noted, the second *Hoskins* prong requires a showing that the litigants do not have an adequate remedy by appeal. The Majority believes that "the adequacy of an appellate remedy is doubtful in this case." According to the majority, forcing the parties to go forward with litigation will interfere "with the orderly administrative proceedings for which the General Assembly has so clearly provided." However, we have addressed the adequacy of appellate review in cases involving venue previously, most recently in *Fritsch v. Caudill*, 146 S.W.3d 926, 928 (Ky.2004), wherein we held that "one aggrieved by a venue determination may not obtain a writ of prohibition, but must proceed by appeal from a final judgment[.]" *Id. citing Pettit v. Raikes*, 858 S.W.2d 171 (Ky.1993). As we noted in *Fritsch*,

Our case law is sufficient to permit relief in truly extraordinary situations. We are unwilling to undermine the authority of trial courts by opening the appellate door via extraordinary writs to every party claiming error during pre-trial proceedings and trial. As we said in *Ison v. Bradley*, [Ky., 333 S.W.2d 784, 786 (1960)]: "By this proceeding, petitioners are attempting a premature appeal and seeking a precipitate decision of this Court on an interlocutory order. It takes a minimum of imagination to envision the utter confusion and chaos in the trial of cases if this Court should entertain original proceedings in cases of this character. The basis urged for so doing is the financial distress of litigants. This is not an uncommon status, however unwanted it may be, and is not confined to litigants. Thus, the delay incident to litigation and appeal by litigants who may be financially distressed cannot be considered as unjust, does not constitute irreparable injury, and is not a miscarriage of justice."

*Id.* at 928–29 (footnote omitted).

I believe the majority opinion, by deeming this to be a jurisdictional question, opens a door to premature appeals in the guise of original writ actions. If this Court wishes to provide for a direct appeal in this type of case, which would otherwise be interlocutory and disallowed, it should do so as it did in *Breathitt County Bd. Of Educ. v. Prater*, 292 S.W.3d 883 (Ky.2009). Furthermore, I believe the majority opinion undermines our recent holdings drawing a bright line around the concept of jurisdiction. I see no reason to open that door or to alter that line; therefore, I would affirm.

SCOTT, J., joins