RENDERED: SEPTEMBER 9, 2022; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0806-MR

MOLINA HEALTHCARE OF
KENTUCKY, INC.                                                                    APPELLANT

v.
APPEAL FROM FRANKLIN CIRCUIT COURT
HONORABLE PHILLIP J. SHEPHERD, JUDGE
ACTION NOS. 20-CI-00719 AND 20-CI-00987

ANTHEM KENTUCKY MANAGED
CARE PLAN, INC.; AETNA BETTER
HEALTH OF KENTUCKY
INSURANCE COMPANY D/B/A
AETNA BETTER HEALTH OF
KENTUCKY INC.;
COMMONWEALTH OF KENTUCKY;
ERIC FRIEDLANDER, IN HIS
OFFICIAL CAPACITY AS
SECRETARY OF THE KENTUCKY
CABINET FOR HEALTH AND
FAMILY SERVICES; HOLLY M.
JOHNSON, IN HER OFFICIAL
CAPACITY AS SECRETARY OF THE
KENTUCKY FINANCE AND
ADMINISTRATION CABINET;
HUMANA HEALTH PLAN, INC.;
KENTUCKY CABINET FOR HEALTH
AND FAMILY SERVICES;
KENTUCKY FINANCE AND

ADMINISTRATION CABINET;
UNITEDHEALTHCARE OF
KENTUCKY, LTD.; AND
WELLCARE HEALTH INSURANCE
COMPANY OF KENTUCKY, INC.
D/B/A WELLCARE OF KENTUCKY,
INC.                                                    APPELLEES


AND


NO. 2021-CA-0819-MR


HUMANA HEALTH PLAN, INC.                        APPELLANT


                        APPEAL FROM FRANKLIN CIRCUIT COURT
v.                      HONORABLE PHILLIP J. SHEPHERD, JUDGE
                        ACTION NOS. 20-CI-00719 AND 20-CI-00987


ANTHEM KENTUCKY MANAGED
CARE PLAN, INC.; AETNA BETTER
HEALTH OF KENTUCKY
INSURANCE COMPANY D/B/A
AETNA BETTER HEALTH OF
KENTUCKY INC.;
COMMONWEALTH OF KENTUCKY;
ERIC FRIEDLANDER, IN HIS
OFFICIAL CAPACITY AS
SECRETARY OF THE CABINET FOR
HEALTH AND FAMILY SERVICES;
HOLLY JOHNSON, IN HER
OFFICIAL CAPACITY AS
SECRETARY OF THE FINANCE AND
ADMINISTRATION CABINET;
KENTUCKY CABINET FOR HEALTH
AND FAMILY SERVICES;

KENTUCKY FINANCE AND
ADMINISTRATION CABINET;
MOLINA HEALTHCARE OF
KENTUCKY, INC.;
UNITEDHEALTHCARE OF
KENTUCKY, LTD.; AND
WELLCARE HEALTH INSURANCE
COMPANY OF KENTUCKY, INC.
D/B/A WELLCARE OF KENTUCKY,
INC.                                                                          APPELLEES


AND


NO. 2021-CA-0822-MR


UNITEDHEALTHCARE OF
KENTUCKY, LTD.                                                      APPELLANT


                          APPEAL FROM FRANKLIN CIRCUIT COURT
v.                      HONORABLE PHILLIP J. SHEPHERD, JUDGE
                          ACTION NOS. 20-CI-00719 AND 20-CI-00987


ANTHEM KENTUCKY MANAGED
CARE PLAN, INC.; AETNA BETTER
HEALTH OF KENTUCKY
INSURANCE COMPANY D/B/A
AETNA BETTER HEALTH OF
KENTUCKY INC.;
COMMONWEALTH OF KENTUCKY;
ERIC FRIEDLANDER, IN HIS
OFFICIAL CAPACITY AS
SECRETARY OF THE KENTUCKY
CABINET FOR HEALTH AND
FAMILY SERVICES; HOLLY M.
JOHNSON, IN HER OFFICIAL

CAPACITY AS SECRETARY OF THE
FINANCE AND ADMINISTRATION
CABINET; HUMANA HEALTH
PLAN, INC.; KENTUCKY CABINET
FOR HEALTH AND FAMILY                                    APPELLEES
SERVICES; KENTUCKY FINANCE
AND ADMINISTRATION CABINET;
MOLINA HEALTHCARE OF
KENTUCKY, INC.; AND WELLCARE
HEALTH INSURANCE COMPANY
OF KENTUCKY, INC. D/B/A
WELLCARE OF KENTUCKY, INC.

AND


NO. 2021-CA-0824-MR


AETNA BETTER HEALTH OF
KENTUCKY INSURANCE
COMPANY D/B/A AETNA BETTER
HEALTH OF KENTUCKY INC.                                 APPELLANT


                    APPEAL FROM FRANKLIN CIRCUIT COURT
v.                  HONORABLE PHILLIP J. SHEPHERD, JUDGE
                    ACTION NOS. 20-CI-00719 AND 20-CI-00987


ANTHEM KENTUCKY MANAGED
CARE PLAN, INC.;
COMMONWEALTH OF KENTUCKY;
ERIC FRIEDLANDER, IN HIS
OFFICIAL CAPACITY AS
SECRETARY OF THE KENTUCKY
CABINET FOR HEALTH AND
FAMILY SERVICES; HOLLY M.
JOHNSON, IN HER OFFICIAL

-4-

CAPACITY AS SECRETARY OF THE
KENTUCKY FINANCE AND
ADMINISTRATION CABINET;
HUMANA HEALTH PLAN, INC.;
KENTUCKY CABINET FOR HEALTH
AND FAMILY SERVICES;
KENTUCKY FINANCE AND
ADMINISTRATION CABINET;
MOLINA HEALTHCARE OF
KENTUCKY, INC.;
UNITEDHEALTHCARE OF
KENTUCKY, LTD.; AND
WELLCARE HEALTH INSURANCE
COMPANY OF KENTUCKY, INC.
D/B/A WELLCARE OF KENTUCKY,
INC.                                                    APPELLEES


AND


NO. 2021-CA-0847-MR


KENTUCKY CABINET FOR HEALTH
AND FAMILY SERVICES                         CROSS-APPELLANT


CROSS-APPEAL FROM FRANKLIN CIRCUIT COURT
v.          HONORABLE PHILLIP J. SHEPHERD, JUDGE
ACTION NOS. 20-CI-00719 AND 20-CI-00987


ANTHEM KENTUCKY MANAGED
CARE PLAN, INC.; AETNA BETTER
HEALTH OF KENTUCKY
INSURANCE COMPANY D/B/A
AETNA BETTER HEALTH OF
KENTUCKY INC.; HUMANA
HEALTH PLAN, INC.; KENTUCKY

FINANCE AND ADMINISTRATION
CABINET; MOLINA HEALTHCARE
OF KENTUCKY, INC.;
UNITEDHEALTHCARE OF
KENTUCKY, LTD.; AND
WELLCARE HEALTH INSURANCE
COMPANY OF KENTUCKY, INC.
D/B/A WELLCARE OF KENTUCKY,
INC.                                                          CROSS-APPELLEES


AND


NO. 2021-CA-0849-MR


ANTHEM KENTUCKY MANAGED
CARE PLAN, INC.                                   CROSS-APPELLANT


CROSS-APPEAL FROM FRANKLIN CIRCUIT COURT
v.         HONORABLE PHILLIP J. SHEPHERD, JUDGE
ACTION NOS. 20-CI-00719 AND 20-CI-00987


KENTUCKY CABINET FOR HEALTH
AND FAMILY SERVICES; AETNA
BETTER HEALTH OF KENTUCKY
INSURANCE COMPANY D/B/A
AETNA BETTER HEALTH OF
KENTUCKY INC.; HUMANA
HEALTH PLAN, INC.; KENTUCKY
FINANCE AND ADMINISTRATION
CABINET; MOLINA HEALTHCARE
OF KENTUCKY, INC.; SECRETARY
ERIC FRIEDLANDER, IN HIS
OFFICIAL CAPACITY AS
SECRETARY OF THE KENTUCKY
CABINET FOR HEALTH AND

-6-

FAMILY SERVICES; SECRETARY
HOLLY JOHNSON, IN HER
OFFICIAL CAPACITY AS
SECRETARY OF THE FINANCE AND          CROSS-APPELLEES
ADMINISTRATION CABINET;
UNITEDHEALTHCARE OF
KENTUCKY, LTD.; AND
WELLCARE HEALTH INSURANCE
COMPANY OF KENTUCKY, INC.
D/B/A WELLCARE OF KENTUCKY,
INC.

AND

NO. 2021-CA-0855-MR

FINANCE AND ADMINISTRATION
CABINET                                        CROSS-APPELLANT

CROSS-APPEAL FROM FRANKLIN CIRCUIT COURT
v.        HONORABLE PHILLIP J. SHEPHERD, JUDGE
ACTION NOS. 20-CI-00719 AND 20-CI-00987

ANTHEM KENTUCKY MANAGED
CARE PLAN, INC.; AETNA BETTER
HEALTH OF KENTUCKY
INSURANCE COMPANY; CABINET
FOR HEALTH AND FAMILY
SERVICES, COMMONWEALTH OF
KENTUCKY; HUMANA HEALTH
PLAN, INC.; MOLINA HEALTHCARE
OF KENTUCKY, INC.;
UNITEDHEALTHCARE OF
KENTUCKY, LTD.; AND

WELLCARE HEALTH INSURANCE                    CROSS-APPELLEES
COMPANY OF KENTUCKY, INC.


OPINION
AFFIRMING IN PART, REVERSING IN PART, VACATING IN PART, AND
REMANDING[1]
** ** ** ** **

BEFORE:  GOODWINE, JONES, AND MAZE, JUDGES.

GOODWINE, JUDGE:  Molina Healthcare of Kentucky, Inc. ("Molina"), Humana

Health Plan, Inc. ("Humana"), UnitedHealthcare of Kentucky, Ltd. ("United"), and

Aetna Better Health of Kentucky Insurance Company d/b/a Aetna Better Health of

Kentucky Inc. ("Aetna") appeal the April 28, 2021 opinion and order and the June

16, 2021 order of the Franklin Circuit Court.  The Cabinet for Health and Family

Services ("CHFS"), the Finance and Administration Cabinet ("FAC"), and Anthem

Kentucky Managed Care Plan, Inc. ("Anthem") cross-appeal.  After a thorough

review of the record, as well as oral arguments, we affirm, in part; reverse, in part;

vacate, in part; and remand.

---

[1] In Molina's appeal, No. 2021-CA-0806-MR, we affirm, in part, and reverse, in part, the orders of the circuit court.  In Humana's appeal, No. 2021-CA-0819-MR, we affirm, in part, and reverse, in part, the orders of the circuit court.  In United's appeal, No. 2021-CA-0822-MR, we affirm, in part, reverse, in part, and vacate, in part, the orders of the circuit court.  In Aetna's appeal, No. 2021-CA-0824-MR, we reverse the orders of the circuit court.  In CHFS' cross-appeal, No. 2021-CA-0847-MR, we reverse the orders of the circuit court.  In the FAC's cross-appeal, No. 2021-CA-0855-MR, we reverse the orders of the circuit court.  In Anthem's appeal, No. 2021-CA-0849-MR, we affirm the orders of the circuit court.

## BACKGROUND

In Kentucky, a managed care organization ("MCO") is a private company selected through the government procurement process to run the Commonwealth's Medicaid system. In 2019, during the administration of Governor Matthew Bevin, the FAC and the Department of Medicaid Services of CHFS issued a request for proposals ("2019 RFP") to determine which five health insurance companies would be awarded contracts to operate Kentucky's MCO program. Seven companies, Anthem, Passport Health Plan ("Passport"), Molina, United, Humana, Aetna, and WellCare Health Insurance Company of Kentucky, Inc. ("WellCare"), responded to the 2019 RFP. After scoring, Molina, United, Humana, Aetna, and WellCare were awarded MCO contracts.

In December 2019, Governor Andy Beshear was sworn into office. Thereafter, CHFS cancelled the previously awarded MCO contracts because Governor Beshear intended to modify Kentucky's Medicaid program. The Bevin administration had applied for and received a waiver under Section 1115 of the Social Security Act, 42 United States Code ("U.S.C.") § 1315(a) ("Section 1115 waiver"). As part of the Section 1115 waiver, Kentucky implemented a work requirement as a condition for qualification for Medicaid. Governor Beshear

terminated the waiver.[2]  The Commonwealth then issued a new RFP ("2020 RFP") for the MCO program.

The same seven companies submitted proposals.  After scoring, the same five companies – Molina, United, Humana, Aetna, and WellCare – were awarded contracts.  Sixteen points separated Molina, the fifth awardee, and Anthem which had the sixth highest score.[3]

On June 12, 2020, Anthem filed a protest with the FAC contesting the awards.[4]  Anthem also filed three subsequent supplements to its protest.  First, Anthem argued the FAC should have conducted oral presentations on the 2020 RFP.  Second, Anthem claimed the FAC improperly waived scoring two categories.  Third, Anthem complained that the FAC should not have deducted points for its failure to include its certificate of authority ("COA") in the electronic copy of its proposal because it provided a hardcopy of the COA.  Fourth, Anthem argued the FAC failed to produce the evaluators' notes upon its open records request.

---

[2] A group of Medicaid recipients successfully challenged the Bevin administration's application for the Section 1115 waiver before its provisions took effect. *Stewart v. Azar*, 366 F. Supp. 3d 125 (D.D.C. 2019).

[3] Molina and Anthem received scores of 1507 and 1491, respectively.

[4] Passport also filed a protest, but we will not address it because the company has not participated on appeal and no longer has an interest in the MCO program due to its acquisition by Molina.

Finally, Anthem alleged Molina should have been disqualified from the RFP due to its retention of Emily Parento ("Parento"). Prior to being retained by Molina on January 30, 2020, Parento was the co-chair of Governor Beshear's Transition Team for Health and Families from November 15, 2019, until his inauguration on December 10, 2019. As a member of the transition team, Parento advised the administration on matters relating to CHFS. She was given access to the identities of the awardees of the 2019 RFP prior to their public announcement. Record on Appeal ("R.")[5] at 402. Molina hired her "to consult related to the planned implementation of its anticipated new health plan in the Kentucky Medicaid market." *Id.* at 401. Anthem claimed Parento's position with the transition team gave her access to non-public information which she could have then provided Molina to assist in the preparation of its 2020 RFP response.

On August 14, 2020, the FAC denied Anthem's protests. The FAC determined none of Anthem's allegations rebutted the presumption of correctness afforded agency decisions on procurement. KRS[6] 45A.280. Furthermore, the FAC found some of Anthem's claims, including those related to Parento's work for Molina, were untimely under KRS 45A.285.

---

[5] These are citations to the record in the circuit court case initiated by Anthem, Action No. 20-CI-00719. Citations to "H.R." are to the record in Humana's circuit court case, Action No. 20-CI-00987.

[6] Kentucky Revised Statutes.

While Anthem was exhausting administrative remedies, Molina entered into an agreement to acquire Passport's MCO assets. As required by Passport's then-existing contract with the Commonwealth, Passport sought and received approval of the assignment of its existing MCO contract from the FAC.[7] The assignment became effective on September 1, 2020. Based on the assignment, Molina was allowed to retain Passport's prior membership under Section 26.2 of its MCO contract effective January 1, 2021.

Humana filed a protest of CHFS' decision to allow Molina to retain Passport's membership. Humana alleged CHFS incorrectly interpreted Section 26.2 of the MCO contract. Section 26.2 of the MCO contract details a system by which CHFS assigns Medicaid enrollees to the MCOs. It states, in pertinent part, that "[a]n MCO currently contracting with the Commonwealth in the Managed Care Program that remains with the Managed Care Program shall not have its current membership reassigned effective January 1, 2021[.]" R. at 2858. Molina entered into the MCO contract with CHFS on May 29, 2020. Based on the assignment of Passport's MCO contract to Molina on September 1, 2020, CHFS determined Molina was a "currently contracting" MCO effective January 1, 2021.

---

[7] Passport was previously awarded an MCO contract to provide services from July 1, 2019, until December 31, 2020. The assignment provided that Passport would continue to operate the MCO program on behalf of Molina for the remainder of the contract period to ensure as little disruption as possible for Medicaid members.

Humana Record ("H.R.")[8] at 99.  Therefore, Molina was permitted to retain the membership it acquired with the assignment.  The FAC was unconvinced by Humana's argument and denied the protest.

On September 4, 2020, Anthem filed an action in the circuit court contesting the FAC's decision and moved for a temporary injunction.  Anthem alleged the scoring irregularities raised before the FAC and claimed Molina's employment of Parento violated both the Executive Branch Code of Ethics ("EBCE") and the Kentucky Model Procurement Code ("KMPC").

Thereafter, United filed crossclaims alleging Anthem also violated the EBCE and the KMPC by employing Catherine Easley ("Easley"), a former employee of CHFS.  In 2019, Easley was an executive advisor to CHFS and left that position to become a Community Outreach Coordinator for Anthem.  Her work for both employers pertained to the Section 1115 waiver.  The circuit court denied United's motion for injunctive relief.  The court found Easley did not participate in the development of 2019 RFP for CHFS or assist Anthem in the development of its response to the RFP.  Furthermore, it determined United's allegation of irreparable harm was speculative.

United further contested Molina's retention of Passport's membership, arguing it suffered irreparable harm from CHFS' decision.  After exhausting

---

[8] *See* footnote 5 on page 11.

-13-

administrative remedies, Humana also filed suit in the circuit court alleging CHFS and FAC breached the MCO contract by allowing Molina to retain Passport's membership.

On October 23, 2020, the circuit court granted Anthem's motion for temporary injunctive relief. Rather than removing Molina as an awardee, the court ordered CHFS to allow Anthem to participate as the sixth MCO for the Commonwealth. The court determined "the public interest in enhanced competition, and the benefit to Medicaid recipients of having a wider range of choices" outweighed the "marginal disadvantage" to the five original awardees.

United further crossclaimed that Anthem's participation as the sixth MCO was a breach of Section 26.2 of the MCO contract. United argued the contract expressly limited CHFS to awarding no more than five contracts for the MCO program. It further alleged that, with a sixth participant, it would not have sufficient membership to operate in the Commonwealth.

On January 11, 2021, the circuit court consolidated Humana's action with Anthem's and ordered all parties to submit motions for partial summary judgment on any threshold issues which were either questions of law or which could be decided based on discovery which had been completed at the time. Anthem, Molina, United, and CHFS filed motions for summary judgment. The circuit court entered an opinion and order resolving the motions on April 28, 2021.

First, the circuit court determined no additional discovery was necessary to decide any issue. Next, the court held CHFS and FAC did not violate the terms of the MCO contract by allowing Molina to retain Passport's membership. Third, CHFS' compliance with the court's order by allowing Anthem to be the sixth participant in the MCO program was not a violation of the MCO contract. Fourth, Parento's employment by Molina is insufficient to disqualify Molina from the 2020 RFP because she did not "substantially influence" the Commonwealth's decision to award Molina a contract. Relatedly, the court determined Parento expressly bound herself to the requirements of the EBCE by signing a confidentiality agreement during her tenure on the transition team. Fifth, Easley's employment did not violate the EBCE and, therefore, does not disqualify Anthem from the 2020 RFP. Finally, the court determined the scoring of the 2020 RFP was flawed.

Ultimately the court concluded that, although none of the four identified scoring deficiencies would be sufficient on their own to invalidate the RFP process, the cumulative effect of those errors coupled with the "appearance of impropriety" created by Parento's work for Molina was sufficient to vacate the 2020 RFP and order the MCO program be rebid. The court ordered a new RFP be issued because it did not have sufficient authority to grant Anthem a contract. The court ordered the six MCO contracts remain in effect pending the new RFP. On

-15-

June 16, 2021, the circuit court denied motions to alter, amend, or vacate filed by the parties apart from correcting minor misstatements.

These appeals and cross-appeals followed.

**STANDARD OF REVIEW**

Summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." CR[9] 56.03. When considering a motion for summary judgment, the circuit court must view the record "in a light most favorable to the party opposing the motion . . . and all doubts are to be resolved in his favor." *Isaacs v. Sentinel Insurance Company Limited*, 607 S.W.3d 678, 680-81 (Ky. 2020) (citation omitted). On appeal, we review decisions on motions for summary judgment *de novo*. *Id.* at 681 (citation omitted).

Furthermore, when reviewing an agency decision, the circuit court must not reinterpret the merits of a claim, nor "substitute its judgment for that of the agency as to the weight of the evidence." *500 Associates, Inc. v. Natural Resources and Environmental Protection Cabinet*, 204 S.W.3d 121, 131 (Ky. App. 2006) (citations omitted). Circuit court review is limited to determining "if the findings of fact are supported by substantial evidence of probative value and whether or not the administrative agency has applied the correct rule of law to the

---

[9] Kentucky Rules of Civil Procedure.

-16-

facts so found." *Id*. (internal quotation marks and citation omitted). Substantial evidence is defined as that which "has sufficient probative value to induce conviction in the minds of reasonable [persons]." *Id*. (citation omitted). A court must affirm an agency decision that is supported by substantial evidence even if it would have reached a different conclusion. *Id*. at 132 (citation omitted). The possibility of reaching two inconsistent conclusions based on the evidence does not preclude the administrative decision from being supported by substantial evidence. *Id*. at 131 (citation omitted).

While issues of law are reviewed *de novo*, "we afford deference to an administrative agency's interpretation of the statutes and regulations it is charged with implementing." *Commonwealth, ex rel. Stumbo v. Kentucky Public Service Commission*, 243 S.W.3d 374, 380 (Ky. App. 2007) (citing *Board of Trustees of Judicial Form Retirement System v. Attorney General of Commonwealth*, 132 S.W.3d 770, 787 (Ky. 2003); *Chevron, U.S.A., Inc. v. Natural Res. Defense Council, Inc.*, 467 U.S. 837, 843-45, 104 S. Ct. 2778, 2782-83, 81 L. Ed. 2d 694 (1984)).

## ANALYSIS

On appeal and cross-appeal, the following issues have been raised: (1) whether scoring of the 2020 RFP violated the KMPC; (2) whether the "appearance of impropriety" attributed to Parento's involvement with Molina was

proper; (3) whether the EBCE applied to Parento because either (a) her work on the transition team met a definition under KRS 11A.010 or (b) she bound herself by signing the confidentiality statement; (4) if the EBCE applied to Parento, whether she violated its provisions; (5) whether Parento's work for Molina violated the KMPC; (6) whether the Commonwealth correctly interpreted Section 26.2 of the MCO contract to allow Molina to retain Passport's membership; (7) whether the circuit court and/or CHFS had authority to award Anthem a sixth MCO contract as ordered in the temporary injunction; (8) whether additional discovery was necessary to determine whether genuine issues of material fact exist; (9) whether Easley's employment by Anthem violated the EBCE; (10) whether either Molina, Anthem, or both should have been disqualified from the RFP rather than invalidating the entire process; (11) whether Aetna was permitted to retain the SKY program award if the 2020 RFP was invalidated.[10]

The Court will now address the above-enumerated issues, though not necessarily in the order set forth above, and other issues we deem necessary to our analysis.

---

[10] The Supporting Kentucky Youth ("SKY") program is a Medicaid program which serves Kentucky's children in foster or out-of-home care, those receiving adoption assistance, former foster youth, and Medicaid-eligible Department of Juvenile Justice youth. It was included in the 2020 RFP but was awarded to Aetna separately from the broader MCO contracts.

**1. Anthem's alleged scoring deficiencies are insufficient to rebut the presumption of correctness afforded to agency decisions under the KMPC**.

The KMPC "establishes uniform practices and procedures against which the procuring entity's conduct can be objectively measured." *Commonwealth v. Yamaha Motor Mfg. Corp.*, 237 S.W.3d 203, 206 (Ky. 2007). With its adoption, the legislature intended to, in part, ensure the bidding process for government contracts is fair and equitable, and increase public confidence in the procurement process. KRS 45A.010(2)(d), (e).

Where the KMPC applies, an offeror aggrieved by the award of a contract by the Commonwealth may file a protest with the secretary of the FAC within two weeks after the person "knows or should have known of the facts giving rise thereto." KRS 45A.285(2). Once the FAC has issued a decision on the protest, the protester may seek judicial review of that decision. *Yamaha*, 237 S.W.3d at 206 (citation omitted). An award must not be arbitrary and capricious or contrary to law. *Id*.

> The decision of any official, board, agent, or other person appointed by the Commonwealth concerning any controversy arising under, or in connection with, the solicitation or award of a contract, shall be entitled to a **presumption of correctness** and shall not be disturbed unless the decision was procured by fraud or the findings of fact by such official, board, agent or other person do not support the decision.

KRS 45A.280 (emphasis added). We presume that "officials are honest, have performed with integrity, and have carried out their statutory duties to the best of their ability as required by law." *Pendleton Bros. Vending, Inc. v. Commonwealth, Finance and Admin. Cabinet*, 758 S.W.2d 24, 30 (Ky. 1988). The presumption of correctness granted to agency decisions is not conclusive, but it affords agencies discretion such that "every purchasing decision or alleged omission is not subject to judicial oversight." *Id*. Absent proof which overcomes the presumption, we will not interfere with an agency's power to accept or reject bids. *See Ohio River Conversions, Inc. v. City of Owensboro*, 663 S.W.2d 759, 761 (Ky. App. 1984).

Anthem alleged four scoring irregularities which the FAC rejected but the circuit court found, when considered with Parento's involvement, were sufficient to invalidate the RFP. These include: (1) failure to hold oral presentations; (2) waiver of scoring of two sections of the 2020 RFP; (3) deduction of points for Anthem's failure to include its COA in the electronic copies of its proposal; and (4) disposal of notes by members of the scoring team. We will consider each alleged deficiency individually.

First, oral presentations were not required under the circumstances of the 2020 RFP. Oral presentations are not required

> [w]here it can be clearly demonstrated and documented
> from the existence of adequate competition or prior
> experience with the particular supply, service, or
> construction item, that acceptance of an initial offer

> without discussion would result in fair and reasonable best value procurement, and the request for proposals notifies all offerors of the possibility that award may be made on the basis of the initial offers.

KRS 45A.085(7)(c).  As articulated by the FAC, the Commonwealth has adequate experience with MCOs – approximately nine years – and there was sufficient competition for the 2020 RFP – seven proposals for five contracts.  R. at 196. Furthermore, the authority of the evaluators to award contracts without oral presentation is confirmed by regulation.  200 KAR[11] 5:307 § 5(1) states, in relevant part,

> [i]f it has been provided in the solicitation that an award may be made without written or oral discussions, the purchasing officer may, upon the basis of the written proposals received, award the contract to the responsible offeror submitting the proposal determined in writing to be the most advantageous to the Commonwealth.

Section 70.1 of the 2020 RFP gives offerors notice that scheduling of oral presentations would be at the discretion of the Commonwealth and that "[t]he Commonwealth reserves the right not to require oral presentations/demonstrations if they do not affect the final rankings."  R. at 183.

Amy Monroe ("Monroe"), a director in the Division of Goods and Services Procurement for the FAC who facilitated scoring of the 2020 RFP, testified on deposition that, based on Section 70.1 and the scoring team's

---

[11] Kentucky Administrative Regulations.

-21-

consensus scoring, the Commonwealth did not need any additional information to award the contracts. Monroe Deposition at 59:3-7. She further testified "at the conclusion of our technical scoring, had there been a need to gain additional information or clarification, then oral presentations would have been the time that we would have done that." *Id*. at 61:18-21. Given the "presumption of correctness" afforded agency decision-making and the notice given to offerors, and the scoring team's choice not to hold oral presentations where no additional information was needed to assist them in making their decision, there was no error.

Second, the scoring team acted within its authority when it chose to waive scoring of two sections of the 2020 RFP. Sections 60.7(B)(2)(d) and (e) required offerors to "[p]rovide a statement of whether there is any past (within the last ten (10) years) or pending litigation against the Vendor or sanctions[,]" and to "describe any Protected Health Information (PHI) breaches (within the past five years) that have occurred and the response." R. at 134. During scoring, the team realized Sections 60.7(B)(2)(d) and (e) had caused confusion for offerors based on discrepancies in their answers. Section 10.2 of the 2020 RFP gives the Office of Procurement Services, which is responsible for scoring, sole authority to "change, modify, amend, alter, or clarify the specifications, terms and conditions" of the RFP. R. at 110.

The team considered whether to stop the scoring process to allow all offerors to clarify their answers and then proceed with regular scoring or to waive scoring. The team unanimously decided it was in the best interest of the Commonwealth to award all offerors full points for both sections and proceeded with consensus scoring. We must presume the scoring team's decision was correct and that they acted in good faith. *See Pendleton Bros.*, 758 S.W.2d at 30. Anthem provided no evidence or authority to rebut this presumption.

Next, the scoring team's deduction of points from Anthem's score because they failed to submit an electronic copy of the COA was neither arbitrary nor capricious. The team awarded Anthem ten of the possible twenty points for the COA. Section 60.5(A) of the 2020 RFP mandates that each offeror submit both a hard copy and ten electronic copies of their proposal. In response to a question from an offeror, the FAC informed all potential offerors that their proposals must be submitted in their entirety by hardcopy and that the electronic copies must match the hardcopy. Monroe Deposition, Exhibit 1 at 100. The electronic copies are important to the scoring process because they allow all members of the scoring team to have simultaneous access to the proposals. R. at 199.

Anthem has cited to no authority which excuses an offeror from fully complying with the requirements of an RFP. The circuit court is correct that Section 60.5(B) of the 2020 RFP states that "[s]hould differences be determined to

exist between the hardcopy proposal and the electronic version, the hardcopy shall prevail." *Id.* at 129. This does not prevent the scoring team from deducting points where an offeror has not complied with the mandates of the RFP. Contrary to the circuit court's conclusion, it is not arbitrary or capricious for an agency to expect an offeror to fully comply with the requirements of an RFP.

Finally, the scoring team's failure to maintain their preliminary notes in their entirety is insufficient to rebut the presumption of correctness of the award. Each member of the scoring team signed an evaluation committee member agreement which states, in part, "[p]reliminary emails, etc. are also subject to [open records requests] and/or discovery. Please keep your comments appropriate and all documentation secure indefinitely, this includes your proposals and any notes." Monroe Deposition, Exhibit 17. Anthem filed an open records request ("ORR") for the Commonwealth to produce all documentation relating to the 2020 RFP.

After receiving the ORR, the FAC requested the members of the scoring team provide all notes. Some team members provided notes and preliminary scoring sheets. Stephanie Bates ("Bates"), a member of the scoring team, testified that she did not keep her preliminary scoring sheets. Bates Deposition at 87:23-25. She further testified to seeing some but not all members of the team take some preliminary notes. *Id.* at 86:5-11. Monroe admitted that,

during a meeting, she told the team they could dispose of their notes after scoring was complete. *Id*. at 163:5-13.

Proposals and scoring sheets for all offerors were made public after the contracts were awarded. Anthem speculates without any specificity about improprieties the missing notes might show. Disposal of the scoring team's notes may violate the terms of the agreement that members signed. But, as determined by the circuit court, this irregularity alone is insufficient to invalidate the RFP process in its entirety. In sum, Anthem's four alleged scoring deficiencies are insufficient to rebut the presumption of correctness afforded to agency decisions under the KMPC.

### 2. The "appearance of impropriety" standard applied by the circuit court to Parento's involvement with the 2020 RFP is without support in law.

The circuit court determined the scoring irregularities in combination with the "appearance of impropriety" created by Parento's work for Molina shortly after leaving Governor Beshear's transition team warranted invalidation of the 2020 RFP. The circuit court's assertion that circumstances which create an "appearance of impropriety" are sufficient to usurp the broad discretion afford the Commonwealth's procurement decisions is completely without support in law.

As previously discussed, the KMPC sets a much higher standard for invalidation of a procurement decision. Nowhere does the KMPC reference the

"appearance of impropriety" as justification for nullifying an agency decision. Instead, an agency decision is entitled to the presumption of correctness unless there is proof that it was obtained by fraud or was unsupported by the agency's findings of fact. KRS 45A.280. This deferential standard allows for overturning only those decisions which are arbitrary and capricious. *Yamaha*, 237 S.W.3d at 206 (citation omitted).

Additionally, the EBCE requires an actual violation of the code to occur for the FAC to void a contract with the Commonwealth. KRS 11A.080(5). Furthermore, where a violation of the EBCE has "substantially influenced" an agency's action, a contract may be voided, rescinded, or cancelled. KRS 11A.100(4). In conclusion, the circuit court's application of an "appearance of impropriety" standard is without support in law. On this basis, we will now consider whether Parento's involvement with the 2020 RFP violated any provision of either the EBCE or the KMPC.

### 3. Parento bound herself by the EBCE by signing the confidentiality agreement to gain access to information regarding the 2019 RFP.

Before reaching the question of whether Parento violated the EBCE, we must first address whether she was bound by its terms. The EBCE was enacted because "[i]t is the public policy of this Commonwealth that a public servant shall work for the benefit of the people of the Commonwealth." KRS 11A.005(1). It

codifies the standards to which public servants are held to maintain public trust and a well-functioning democratic government.  *Id*.  Under the EBCE,

> [n]o public servant, by himself or through others, shall knowingly:
>
> > (a) Use or attempt to use his influence in any matter which involves a substantial conflict between his personal or private interest and his duties in the public interest;
> >
> > (b) Use or attempt to use any means to influence a public agency in derogation of the state at large;
> >
> > (c) Use his official position or office to obtain financial gain for himself or any members of the public servant's family; or
> >
> > (d) Use or attempt to use his official position to secure or create privileges, exemptions, advantages, or treatment for himself or others in derogation of the public interest at large.

KRS 11A.020(1).

"Public servant" is defined, in part, to include "[a]ll employees in the executive branch including officers as defined in subsection (7) of this section and merit employees[.]"  KRS 11A.010(9)(h).  Transition team members were not specifically categorized as public servants or directly referenced in the version of KRS Chapter 11A which was in effect at the time the 2019 and 2020 RFPs were published and scored or when the MCO contracts were awarded.  The statute has

since been amended by the legislature to include the "transition team" and set ethical standards for transition team members. KRS 11A.047.[12]

We need not determine whether transition team members were considered "officers" under the EBCE prior to this amendment because Parento expressly agreed to be bound by its terms. During her time on the transition team, Parento signed a confidentiality statement to give her access to the 2019 RFP. Therein, it states, "I acknowledge that I and all other members of the review team are subject to the provisions of the Executive Branch Code of Ethics (KRS Chapter 11A)." R. at 79.

A confidentiality agreement is a written instrument and, if possible, a court must construe it to give effect to every word and all its terms. *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 384-85 (Ky. App. 2002) (citation omitted). "[I]n the absence of ambiguity a written instrument will be enforced strictly according to its terms, and a court will interpret the contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence." *Frear v. P.T.A. Industries, Inc.*, 103 S.W.3d 99, 106 (Ky. 2003) (internal quotation marks and citations omitted). One party's intention of a different result is insufficient to interpret the terms of an instrument contrary to

---

[12] KRS 11A.047 became effective on June 29, 2021.

their plain and unambiguous meaning. *AnyConnect US, LLC v. Williamsburg Place, LLC*, 636 S.W.3d 556, 562 (Ky. App. 2021) (citation omitted).

There is no ambiguity in the language of the confidentiality statement. It plainly states that Parento agreed to be bound by the EBCE at least with regard to her involvement with the 2019 RFP. Molina's argument that Parento "expressly and unequivocally refuted that interpretation in her affidavit testimony" is insufficient to invalidate the agreement where the language of the instrument is unambiguous.

Individuals, such as Parento, who are subject to the EBCE are prohibited from certain conduct after leaving the executive branch.

> A present or former officer or public servant . . . shall not, within one (1) year following termination of his or her office or employment, accept employment, compensation, or other economic benefit from any person or business that contracts or does business with, or is regulated by, the state in matters in which he or she was **directly involved** during the last thirty-six (36) months of his or her tenure. This provision shall not prohibit an individual from returning to the same business, firm, occupation, or profession in which he or she was involved prior to taking office or beginning his or her term of employment, or for which he or she received, prior to his or [her] state employment, a professional degree or license, provided that, for a period of one (1) year, he or she personally refrains from working on any matter in which he or she was **directly involved** during the last thirty-six (36) months of his or her tenure in state government.

KRS 11A.040(7) (emphasis added).  In sum, Parento was bound by the requirements of the EBCE based on her consent to the terms of the confidentiality statement.

### 4. The circuit court was without jurisdiction to determine whether Parento violated the EBCE.[13]

We will not address whether Parento violated the EBCE because Anthem did not exhaust administrative remedies before raising this issue before the circuit court.  Any person can file a complaint with the Executive Branch Ethics Commission ("Commission") stating the grounds upon which they believe a public servant violated the EBCE.  *See* KRS 11A.080(1)(a).  The Commission is empowered to either confidentially reprimand the alleged violator or initiate administrative proceedings.  KRS 11A.080(4).  Furthermore, after an administrative hearing, the Commission may order the violator to cease and desist; recommend to the violator's appointing authority that the violator he removed or suspended; or order the violator to pay civil penalties.  KRS 11A.100(3).  Additionally, if the EBCE is violated in relation to a contract with the

---

[13] CHFS raised this issue in its appellee brief in No. 2021-CA-0819-MR.  But, even if it had not done so, "[the] premature filing of an action in circuit court without first exhausting the administrative remedies . . . deprive[s] the circuit court of subject matter jurisdiction to hear [the] claim." *Jefferson Cty. Bd. of Educ. v. Edwards*, 434 S.W.3d 472, 479 (Ky. 2014).  And it is well-established that lack of subject matter jurisdiction is not subject to waiver or preservation.  It can be raised at any time, even for the first time on appeal.  *Basin Energy Co. v. Howard*, 447 S.W.3d 179, 183 (Ky. App. 2014) (citation omitted).  *See also Nordike v. Nordike*, 231 S.W.3d 733, 738 (Ky. 2007) (citation omitted).

Commonwealth, the secretary of the FAC may void the contract. KRS 11A.080(5).

The circuit court focused its analysis on the portion of the EBCE which states that any violation "which has substantially influenced the action taken by any state agency in any particular matter shall be grounds for voiding, rescinding, or canceling the action[.]" KRS 11A.100(4). Importantly, this is a determination the Commission is empowered to make by statute. In fact, KRS 11A.100 in its entirety pertains to administrative hearings the Commission is authorized to conduct.

It is a settled rule that a party is required to exhaust administrative remedies as a "jurisdictional prerequisite to seeking judicial relief[.]" *Kentucky Executive Branch Ethics Comm'n v. Atkinson*, 339 S.W.3d 472, 476 (Ky. App. 2010). This allows the administrative body the opportunity to first build a factual record and render a final decision. *Popplewell's Alligator Dock No. 1, Inc. v. Revenue Cabinet*, 133 S.W.3d 456, 471 (Ky. 2004) (citation omitted). "[F]ailure to raise an issue before an administrative body precludes the assertion of that issue in an action for judicial review." *Puckett v. Cabinet for Health and Family Services*, 621 S.W.3d 402, 407 (Ky. 2021) (citations omitted).

At no time prior to seeking judicial review of the FAC's decision did Anthem file a complaint with the Commission regarding Parento's alleged

violation of the EBCE. Anthem argues it was not required to separately file a complaint with the Commission because the 2020 RFP required certification that that it did not violate the EBCE, making its protest filed with the FAC sufficient. However, this certification did not divest the Commission of its authority under KRS Chapter 11A which is distinct from that of the FAC under KRS Chapter 45A. *See Executive Branch Ethics Comm'n v. Stephens*, 92 S.W.3d 69, 73 (Ky. 2002). Furthermore, Anthem did not specifically allege Parento's violation of the EBCE in its protest, nor did the FAC address the issue in its decision.[14]

Instead, Anthem first raised the alleged violation of the EBCE as grounds for disqualification of Molina from the 2020 RFP before the circuit court. Because the issue was not first presented to the Commission, the circuit court was without jurisdiction to determine whether a violation of the EBCE occurred. On this basis, we will not address the merits of the EBCE claim. Our analysis must be limited to whether Parento's involvement with Molina after being a part of Governor Beshear's transition team in any way violates the KMPC.

---

[14] We are not suggesting the FAC would have had the authority to determine whether Parento violated the EBCE. That authority rests solely with the Commission. KRS 11A.080. We mean only to emphasize Anthem's disregard for the administrative process.

**5. Anthem's protest regarding whether Molina's retention of Parento violated the KMPC was untimely filed with the secretary of the FAC.**

The secretary of the FAC has the authority over protests related to any solicitation or award of a contract by the Commonwealth under the KMPC. KRS 45A.285(1). Any aggrieved offeror may file a protest of the award with the secretary. KRS 45A.285(2). "A protest or notice of other controversy must be filed promptly and in any event within two (2) calendar weeks after such aggrieved person knows or should have known of the facts giving rise thereto." *Id.* If a protest alleges deficiencies in the award of a contract, "the facts giving rise to the protest shall be presumed to have been known to the protester on the date the notice of award of a contract" was posted on the same website. 200 KAR 5:380 § 1(1)(b).

As found by the FAC, Anthem relies on information it knew or should have known more than two weeks prior to filing its protest. Specifically, it is undisputed that Parento's participation with Governor Beshear's transition team was publicly announced in November 2019. R. at 202. Her involvement with Molina's 2020 RFP was made public when the scoring sheets and responses were made available on May 29, 2020. R. at 212, 229.[15] Under 200 KAR 5:380 §

---

[15] The executive summary of Molina's proposal references its retention of Parento to assist in implementation of the managed care program. Additionally, the first page of Molina's scoring sheet notes Parento's potential involvement in the comments section for the executive summary.

1(1)(b), Anthem is presumed to have known these facts on the date of publication of the scoring sheets. Anthem has not rebutted this presumption by showing that these facts were not and should not have been known to them on May 29, 2020. *See* 200 KAR 5:380 § 1(2). Therefore, Anthem's protest should have been filed on or before June 12, 2020, the date on which Anthem's initial protest was filed. Instead, Anthem filed an untimely supplemental protest on June 26, 2020, asserting its claims regarding Parento's involvement.

Furthermore, had the protest been timely, Anthem's allegations do not rebut the agency's presumptively correct decision. Speculation alone cannot invalidate a procurement decision. The record does not prove Parento influenced the scoring team, nor does it show that Parento shared with Molina any confidential information she gained access to as a member of the transition team. At most, Molina's scoring sheet indicates the scoring team was aware Parento was involved in some capacity with Molina's proposal.

Bates testified that Parento's name was only briefly mentioned during the scoring of Molina's proposal. Bates Deposition at 120:19-22. Monroe testified that she was the custodian of the bid file prior to the award of the 2019 MCO contracts, and that, even after Parento signed the confidentiality agreement, Monroe did not give her access to the file. Monroe Deposition at 115:16-19. The record shows only that Parento was given access to the identities of the awardees

of the 2019 RFP shortly before they were made public. Anthem has not proven

she had access to any confidential information which might have been helpful to

Molina in creation of the 2020 proposal. Given the presumption that members of

the scoring team have acted honestly and with integrity, we are unconvinced there

was any violation of the KMPC. *Pendleton Bros.*, 758 S.W.2d at 30.

In sum, the FAC correctly determined that Anthem produced no

evidence which rebuts the presumption of correctness afforded agency decisions in

KRS 45A.280. At best, Anthem seeks to substitute its own judgment on scoring

for that of the Commonwealth and engages in speculation as to Parento's influence

over the procurement process. This is insufficient to support invalidation of the

2020 RFP. Although Monroe's instruction for the scoring team to dispose of their

notes may have been unwise, it does not, on its own, invalidate the RFP process in

light of the Commonwealth's extensive discretion over procurement.

> **6. The Commonwealth properly interpreted Section 26.2 of the MCO contract and allowed Molina to retain its membership as a "currently contracting" MCO**.

Section 26.2 of the MCO contract states, in relevant part, that "[a]n

MCO **currently contracting** with the Commonwealth in the Managed Care

Program that remains with the Managed Care Program shall not have its current

membership reassigned effective January 1, 2021, with the exception [of]

Enrollees who are required to be enrolled in the Kentucky SKY program." R. at

-35-

2858 (emphasis added). Thereafter, the contract provides a scheme for reassigning membership where an MCO does not continue with the program. Molina contracted to participate in the MCO program on May 29, 2020. *Id*. at 2757. Molina then acquired Passport's MCO assets on July 17, 2020. At the time of the assignment, Passport had contracted with the Commonwealth as an MCO from July 1, 2019 to December 31, 2020. Under the assignment, Passport agreed to operate the MCO program on Molina's behalf for the remainder of the 2019-2020 contract period. The FAC approved the assignment of Passport's existing contract to Molina and the assignment became effective on September 1, 2020. Molina was then treated as an incumbent MCO under Section 26.2 of the new MCO contract, meaning that Passport's membership was not reallocated among the participating MCOs when the contracts became effective on January 1, 2021.

Because this issue concerns interpretation and enforcement of the terms of a contract with the Commonwealth, we must review the FAC's decision *de novo*. *Kentucky Spirit Health Plan, Inc. v. Commonwealth, Finance and Administration Cabinet*, 462 S.W.3d 723, 728 (Ky. App. 2015) (citation omitted).[16]

On review, absent ambiguity, we must "give effect to the parties' intent as expressed by the ordinary meaning of the language they employed."

---

[16] The circuit court applied the incorrect standard of review to this issue by finding it was required to "defer to the agency charged by law with administering this complex program, so long as the agency interpretation is not arbitrary and capricious." R. at 5311.

*Mostert v. Mostert Group, LLC*, 606 S.W.3d 87, 91 (Ky. 2020) (citation omitted).

Mere disagreement about the meaning of terms does not render the contract ambiguous. *Id*. The ordinary meaning of the terms of Section 26.2 clearly indicates that the effective date of the MCO contract is January 1, 2021. Organizations which have contracted as MCOs prior to that date are considered "currently contracting," and, if they continue in the MCO program, will not have their membership reassigned. The circuit court correctly found no ambiguity. Because Molina began participating in the MCO program on September 1, 2020, under the assignment of Passport's prior contract, it was "currently contracting" as of January 1, 2021. Therefore, the Commonwealth properly interpreted the contract and allowed Molina to retain its membership.

### 7. Whether the circuit court had the authority to order CHFS to award Anthem a MCO contract is moot.

In the October 23, 2020 order granting temporary injunctive relief, the circuit court "balanced the equities" to justify ordering CHFS to award Anthem an MCO contract, making it the sixth awardee. Because Anthem did not rebut the presumption of correctness of the FAC's decision, there is no basis to invalidate the 2020 RFP. Therefore, the contracts originally awarded to the five MCOs will be enforced and the temporary injunction granting Anthem's contract will be vacated.

An issue is moot where, once a decision is rendered, "for any reason, [it] cannot have any practical legal effect upon a *then* existing controversy." *Lincoln Trail Grain Growers Association, Inc. v. Meade County Fiscal Court*, 632 S.W.3d 766, 776 (Ky. App. 2021) (citation omitted). This Court will not render opinions which are merely advisory. *Morgan v. Getter*, 441 S.W.3d 94, 99 (Ky. 2014) (citation omitted).

Even if we were to invalidate the 2020 RFP and order it rebid, the circuit court was without the authority to compel CHFS to award Anthem a contract. The KMPC prohibits arbitrary and capricious awards. *Yamaha*, 237 S.W.3d at 206 (citation omitted); *see also* KRS 45A.280. But the KMPC does not divest procurement officers of their considerable discretion. *Laboratory Corp. of America Holdings v. Rudolph*, 184 S.W.3d 68, 75 (Ky. App. 2005); *see also Guardian Angel Staffing Agency, Inc. v. Commonwealth*, Nos. 2013-CA-000090-MR, 2013-CA-000143-MR, 2013-CA-000150-MR, 2013-CA-000348-MR, 2015 WL 3826343, *4 (Ky. App. Jun. 19, 2015).[17] The KMPC does not empower disappointed bidders to compel agencies to award them contracts. *See* KRS Chapter 45A; *see also Guardian Angel*, 2015 WL 3826343, at *4. A court may not usurp an agency's authority over procurement to compel a contract be awarded to a specific offeror. A circuit court's authority is limited to invalidating an award

---

[17] We cite this unpublished opinion as persuasive, not binding, authority. *See* CR 76.28(4)(c).

where a party successfully rebuts the presumption of correctness afforded agency decisions. *See Pendleton Bros.*, 758 S.W.2d at 30. Thus, the circuit court improperly assumed the Commonwealth's authority when it ordered CHFS to award Anthem an MCO contract.

### 8. There is no need to allow for additional discovery on any issue.

> When reviewing a motion for summary judgment the inquiry should be whether, from the evidence of the record, facts exist which would make it possible for the non-moving party to prevail. . . . [T]he focus should be on what is of record rather than what might be presented at trial. When the moving party has presented evidence showing that[,] despite the allegations of the pleadings[,] there is no genuine issue of any material fact, it becomes incumbent upon the adverse party to counter that evidentiary showing by some form of evidentiary material reflecting that there is a genuine issue pertaining to a material fact. However, the hope or bare belief . . . that something will "turn up," cannot be made basis for showing that a genuine issue as to a material fact exists.

*Benningfield v. Pettit Environmental, Inc.*, 183 S.W.3d 567, 572-73 (Ky. App. 2005) (some internal quotation marks and citations omitted). Herein, Anthem provides only the most speculative assertions that, given more time, they would be able to uncover something which would create a genuine issue of material fact. This is insufficient to merit reversal. Additional discovery was unnecessary to decide any issue.

**9. We need not address the merits of any remaining arguments**.

Finally, because the 2020 RFP process was valid, we need not address the merits of any remaining arguments. Specifically, CHFS did not award Anthem a contract and, therefore, we need not address the merits of the arguments related to Easley's employment. Additionally, because the 2020 RFP was valid, Aetna will retain the SKY program contract and we need not address the arguments related thereto.

## CONCLUSION

In sum, we affirm the Franklin Circuit Court's determinations that (1) the Commonwealth correctly interpreted Section 26.2 of the MCO contract and allowed Molina to retain membership, (2) Parento is bound by the EBCE because she consented to the confidentiality statement, and (3) additional discovery was not necessary. Otherwise, we reverse the court's order invalidating the 2020 RFP and remand this matter to the circuit court for entry of an order vacating the temporary injunction which granted Anthem an MCO contract.

ALL CONCUR.

BRIEFS FOR MOLINA:

David Tachau
Dustin E. Meek
Katherine Lacy Crosby
Louisville, Kentucky

Mitchel T. Denham
Kayla M. Campbell
Louisville, Kentucky

David V. Kramer
Covington, Kentucky

ORAL ARGUMENT FOR
MOLINA:

Katherine Lacy Crosby
Louisville, Kentucky

BRIEFS FOR HUMANA:

Michael P. Abate
Casey L. Hinkle
Louisville, Kentucky

ORAL ARGUMENT FOR
HUMANA:

Michael P. Abate
Louisville, Kentucky

BRIEFS FOR UNITED:

Mark W. Leach
Louisville, Kentucky

Alex P. Hontos, *pro hac vice*
Christopher A. DeLong, *pro hac vice*
Minneapolis, Minnesota

BRIEFS FOR CHFS:

Wesley W. Duke
Jessica D. Williamson
Blake A. Vogt
Frankfort, Kentucky

ORAL ARGUMENT FOR CHFS:

Wesley W. Duke
Frankfort, Kentucky

BRIEFS FOR FAC:

Brian C. Thomas
Wm. Robert Long, Jr.
Cary Bishop
Frankfort, Kentucky

ORAL ARGUMENT FOR FAC:

Brian C. Thomas
Frankfort, Kentucky

BRIEFS FOR ANTHEM:

Craig C. Dilger
Harry L. Dadds
Adam C. Reeves
Louisville, Kentucky

James A. Washburn, *pro hac vice*
Atlanta, Georgia

Christopher G. Browning, Jr., *pro hac
vice*
Raleigh, North Carolina

ORAL ARGUMENT FOR UNITED:    ORAL ARGUMENT FOR ANTHEM:

Alex P. Hontos, *pro hac vice*    James A. Washburn, *pro hac vice*
Minneapolis, Minnesota    Atlanta, Georgia

BRIEFS FOR AETNA:

Fredrick Ryan Keith
Louisville, Kentucky

Marc J. Kessler, *pro hac vice*
Columbus, Ohio

Robert J. Fogarty, *pro hac vice*
Cleveland, Ohio

ORAL ARGUMENT FOR AETNA:

Marc J. Kessler, *pro hac vice*
Columbus, Ohio